**Sheldon Louis POLAKOFF, Petitioner-Appellant,**

**v.**

**UNITED STATES of America, Respondent-Appellee.**

**No. 73–1483**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Feb. 14, 1974.

Rehearing and Rehearing En Banc Denied March 12, 1974.

---

* Rule 18, 5 Cir.; Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Samuel S. Forman, Miami, Fla. (Court-appointed), for petitioner-appellant.

Robert W. Rust, U. S. Atty., Miami, Fla., for respondent-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

In this § 2255 case, Sheldon Louis Polakoff seeks to void his conviction for fraud by wire and mail fraud. He challenges the legality of the search of his office-warehouse and the seizure of his records. He also seeks credit against his sentence for time spent free on a highly restricted bond. In denying the petition, the district court held that the challenged search was reasonable as incident to a valid arrest, and that even had it been unreasonable, Polakoff had not been prejudiced by it, since nothing taken from his office-warehouse was introduced in evidence at the trial. The court also questioned Polakoff's standing to object to the search, since title to the records seized had passed to a trustee in bankruptcy prior to the arrest. Finally, the district court concluded that, as in the case of time spent on parole, time spent free on bond is not time "in custody" and will not be credited against a prisoner's sentence. We affirm.

On the morning of March 21, 1968, Polakoff was served with a subpoena and an involuntary petition in bankruptcy. The petition pertained, at least in part, to an office-warehouse Polakoff maintained under the name of Discount Faire at 1035 East 13th Street, Hileah, Florida. At the same time, the district court appointed a receiver to take charge of Polakoff's assets. That afternoon, while at the 13th Street property, Polakoff was arrested on a warrant issued on a mail fraud complaint. The building was searched and its contents inventoried by agents of the Federal Bureau of Investigation. The search was made without a warrant, but with the consent of the receiver's attorney.

In January 1970 Polakoff was tried and convicted of mail fraud and fraud by wire, violations of Title 18, United States Code, Sections 1341 and 1343, respectively. Nothing seized in the FBI's search of Polakoff's business premises

was introduced in evidence at the trial. He was sentenced to five years imprisonment, but was released on bond pending appeal, until his conviction was affirmed by this Court in United States v. Pollack a/k/a Polakoff, 5 Cir. 1970, 433 F.2d 967.

To the appellant's assertion that the search of his office and warehouse was unreasonable, the Government makes three replies. The first—that none of the material seized was introduced at trial and that there was an independent basis for all of the Government's evidence—we need not consider, since we hold that the search was reasonable, and that the evidence could properly have been admitted. Next, the Government asserts that Polakoff has no standing to challenge the constitutionality of the search, because Title 11, United States Code, Section 110 stipulates that once the bankruptcy petition is filed, title to the bankrupt's records passed to the bankruptcy court, and subsequently to the trustee in bankruptcy. In re American Southern Publishing Co., 5 Cir. 1970, 426 F.2d 160, 163, cert. denied sub nom., Bailes v. First National Bank of Mobile, 400 U.S. 903, 91 S.Ct. 141, 27 L. Ed.2d 140; Kohn v. Myers, 2 Cir. 1959, 266 F.2d 353, 355. In light of our conclusion that the search and seizure of Polakoff's records were reasonable, it is not essential that we reach this standing question either, but we decline to rest our decision on that basis. We assume, without deciding, that Kroll v. United States, 5 Cir. 1970, 433 F.2d 1282, 1288–1289, cert. denied, 402 U.S. 944, 91 S.Ct. 1618, 29 L.Ed.2d 112, which denied standing to a bankrupt defendant whose records were actually on the premises of the trustee when seized, would not bar standing where, as here, a petition is filed and a receiver appointed the same day that a warrantless search is conducted on the bankrupt's premises.[1] To assume the contrary, would permit the use of section 110 as a device to exempt a significant class of warrantless searches from constitutional challenge.

■■ We hold that the search was reasonable. In Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L. Ed.2d 685, the Supreme Court limited the permissible scope of warrantless searches incident to a lawful arrest to the area within reach of the arrestee. Here, however, the search in question occurred before that case was decided, so pre-*Chimel* standards must apply. Williams v. United States, 1971, 401 U. S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388.

---

1. *Kroll* held that a defendant did not have standing to challenge the constitutionality of a search of the records of a corporation of which he was sole shareholder, when the records were in the possession of a trustee. 433 F.2d at 1288. It is beyond dispute that the bankruptcy laws vest title to the property of the bankrupt in the trustee as of the date of the bankruptcy petition, although the trustee may not be appointed until months later. 11 U.S.C. § 110(a) (1970). Yet it can hardly be *Kroll's* holding that the moment a petition is filed an allegedly bankrupt defendant forfeits any right to challenge an unconstitutional search of his premises or seizure of his property. The search in *Kroll* occurred a full year and one-half after the trustee had taken physical possession of the bankrupt's records and removed them to the trustee's premises. Furthermore, the court was emphatic in concluding that "no area in which [the bankrupt] had an interest was violated". 433 F.2d at 1289. Moreover, the court stressed the fact that corporate rather than personal records were involved in the seizure. Finally, the court suggested (but did not endorse) a view that the consent of a *receiver* to a search may not have the same impact on a bankrupt's standing as will the permission of a *trustee*. *Id.* Here, the receiver's attorney apparently gave his permission for the search within hours after Polakoff was served with the petition, and months before a trustee was even appointed. The records seized were allegedly personal as well as business-related, were still on the premises of the bankrupt, and were in an area in which, until a few hours before, at least, he had had a clear interest. The applicable standard is more properly found in Jones v. United States, 1960, 362 U.S. 257, 267, 80 S.Ct. 725, 734, 4 L.Ed.2d 697, 706:

> No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a seach occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him.

The pre-*Chimel* cases simply inquire whether the search was reasonable, giving considerable weight to the district court's determination of the question. When a valid arrest has been effected, these decisions would authorize a search incident to that arrest which extends beyond the person of the defendant to the surrounding premises under his immediate control, including rooms other than that in which he was arrested. United States v. Rabinowitz, 1950, 339 U.S. 56, 63, 70 S.Ct. 430, 434, 94 L.Ed. 653, 659; Harris v. United States, 1947, 331 U.S. 145, 150–152, 67 S.Ct. 1098, 1101–1102, 91 L.Ed. 1399, 1405–1406. It was such a search that the district court determined to be reasonable here; the appellant has cited no authority which persuades us that the district court's determination should be altered. In short, we cannot say that the search of Polakoff's office-warehouse, the place where he was arrested, was unreasonable under the pre-*Chimel* cases.

■ The appellant's second contention is that he is entitled to sentence credit for the period he spent on highly restricted bond between the time of his arrest and our affirmance of his conviction. He maintains that Title 18, United States Code, Section 3568,[2] which allows credit against sentence for time spent "in custody", applies to time he spent free on bond, since he was under travel and social restrictions and was required to report weekly to a probation officer. This, he insists, is "custody", citing the recent decision of the United States Supreme Court in Hensley v. Municipal Court, 1973, 411 U.S. 345, 93 S. Ct. 1571, 36 L.Ed.2d 294. We find this argument to be without merit.

■ The "custody" contemplated by Section 3568 is that characterized by incarceration; a federal sentence does not begin to run, and credit thus accrue, until the prisoner is received at the place of imprisonment. Scott v. United States, 5 Cir. 1970, 434 F.2d 11, 21 (per curiam). Polakoff, in effect, seeks a determination that he was "serving time" while free on bond, merely because he was under restrictions. We must agree with the Ninth Circuit that "[t]here is no reason for treating time spent on bail as jail time". Sica v. United States, 9 Cir. 1971, 454 F.2d 281, 282 (per curiam).

The Supreme Court's decision in Hensley v. Municipal Court, *supra,* does not compel a contrary conclusion. *Hensley* stands for the limited proposition that a state prisoner who has exhausted his state remedies and has been released on his own recognizance pending application for federal relief is "in custody" within the meaning of the federal habeas corpus statute, Title 28, United States Code, Sections 2241(c)(3) and 2254(a) [3]. Nothing in the opinion intimates an intention to allow federal prisoners sentence credit for time spent free on bond; by its very terms the decision is a limited one.[4] See Cochran v. United States, 5 Cir. 1974, 489 F.2d 691, which reaches a similar conclusion.

Accordingly, the decision appealed from is

Affirmed.

<hr/>

2. Section 3568 provides, in pertinent part:
   The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed.

3. Section 2241(c)(3), the provision which extends federal habeas relief to state prisoners, requires that a petitioner be "in custody"

before federal jurisdiction will attach. See also 28 U.S.C. § 2254(a).

4. As the Court observed:
   Finally, we emphasize that our decision does not open the doors of the district courts to the habeas corpus petitions of all persons released on bail or on their own recognizance. We are concerned here with a petitioner who has been convicted in state court and who has apparently exhausted all available state court opportunities to have that conviction set aside.
411 U.S. at 353, 93 S.Ct. at 1575–1576, 36 L.Ed.2d at 301.